UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 5:19-cv-00139-TBR

NICHOLE GUTHRIE, Individually, and as
Parent and Next Friend of K.L. GUTHRIE,
A minor child                                                                                        PLAINTIFFS

v.

UNITED STATED OF AMERICA,
DEPARTMENT OF AGRICULTURE, and
JAMES THWEATT                                                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant James Thweatt's ("Thweatt") Motion to Dismiss. [DN 8.] The United States has also filed a Motion to Dismiss. [DN 9.] Nichole Guthrie ("Guthrie") filed a Motion for Extension of Time to Respond. [DN 10.] Guthrie has subsequently responded. [DN 12.] Thweatt and the United States have replied [DNs 14 and 15] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Guthrie's Motion for Extension of Time to Respond [DN 10] is **GRANTED**. Thweatt's Motion to Dismiss [DN 8] is **GRANTED**. The United States' Motion to Dismiss [DN 9] is **GRANTED**.

**I. Background**

Guthrie along with her son K.L. visited Thweatt at Wranglers Campground from October 8-9, 2016. [DN 12-1 at PageID 89.] Thweatt was employed as a Facility Campground Manager at that time. [DN 1 at 1.] Guthrie alleges Thweatt was working overtime during this weekend. [*Id.*] Thweatt's sister, Regina Holt and her daughter E.H. were also present. [DN 12-1 at PageID 89.] On October 9, 2016 Guthrie alleges Thweatt performed managerial duties throughout the day. [*Id.* at PageID 90.] At approximately 11 a.m. Thweatt, K.L., Guthrie, and E.H. went to ride horses. [*Id.*] Thweatt and E.H. rode "Clarabell" while Guthrie and K.L. rode "Sonny". [*Id.*] E.H indicated

she needed to use the restroom, so they rode to a porta potty. [*Id.*] Thweatt lifted E.H. back onto Clarabell but the horse backed away. [*Id.*] Thweatt allegedly yelled "you b---h" and slapped Clarabell. [*Id.*] Clarabell reared up and spooked Sonny. [*Id.* at PageID 91.] Both horses took off running and Thweatt allegedly yelled at Guthrie and K.L. to "get off the horse". [*Id.*] Guthrie grabbed K.L. and jumped off the horse. [*Id.*]

Guthrie broke her pelvis in three places and cracked her tailbone. [DN 1 at 3-4.] K.L broke his collar bone. [*Id.* at 4.] Thweatt and the United States have moved to dismiss this action for lack of subject matter jurisdiction. Thweatt alternatively moved to dismiss for failure to state a cause of action.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir. 2007). In a challenge to the factual basis, however, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case ... no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,

1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir. 1977)). Here, Thweatt makes a factual attack.

### III. Discussion

### A. Subject Matter Jurisdiction

28 U.S.C. § 1346(b)(1) provides this Court:

shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(emphasis added). "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Westinghouse Elec. Corp.*, 78 F.3d at 1143. This matter occurred in Kentucky. Therefore, Kentucky law will govern whether Thweatt was acting within the scope of his employment.

"Under Kentucky law, for alleged conduct to be considered within the scope of employment 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Osborn v. Payne,* 31 S.W. 3d 911, 915 (Ky. 2000). "Kentucky courts look to the following four factors in determining whether an employee's action is within the scope of employment

(1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties. *Coleman*, 91 F.3d at 824 (citing *Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1993); *Frederick v. Collins*, 378 S.W.2d 617, 619 (Ky. Ct. App. 1964); *Wood v. Se. Greyhound Lines*, 194 S.W.2d 81, 83 (Ky. 1946))."

*McMullan v. United States*, 2017 WL 903461, at *3 (W.D. Ky. Mar. 7, 2017), aff'd, No. 17-5463, 2017 WL 8220209 (6th Cir. Dec. 13, 2017).

### 1. Whether Conduct was Similar to that Which the Employee was Hired to Perform

Tina Tilley, Thweatt's supervisor has provided Thweatt's responsibilities in a declaration. Those responsibilities include: "maintaining the campground's budget for both operations and management; serving as Contracting Officer's Representative for the Recreation Area's maintenance contracts for grounds, facilities, roads and trails related work; and serving as the facilities primary point of contact with visitors and users." [DN 9-1 at PageID 64.] In Guthrie's declaration, she stated Thweatt would often ride Clarabell to complete job duties such as inspecting trails and picking up trash. [DN 21-1 at PageID 92.] She also stated Thweatt would always interact with other riders on the trail and ask if they had trouble with anything. [*Id.*]

However, Guthrie does not allege that they were on a ride that day to inspect trails or conduct any employment duties. Guthrie alleges that at approximately 8 a.m. Thweatt left to conduct management duties while dressed in his uniform. [DN 12-1 at PageID 90.] He returned to the campsite later that morning to eat breakfast with Guthrie, Regina, K.L. and E.H. [*Id.*] After breakfast, Guthrie alleges Thweatt left to take firewood to a camper but told Guthrie and Regina to get the horses ready so they could go on a ride. [*Id.* at PageID 91.] While on their horse ride, Guthrie does not allege Thweatt engaged in any management activities. Guthrie argues Thweatt helping a visitor onto a horse is reasonably incident to his regular duties. However, the Court disagrees.

Guthrie, Regina, E.H. and K.L were not just any visitors to the campgrounds. They were personal guests of Thweatt. Further, Thweatt was not just helping a visitor onto a horse or riding on the same trail as a visitor during that time. He was sharing a horse with his niece while riding alongside his girlfriend and her child. Without any indication that he was engaged in any management duties at that time, it cannot be said this conduct was similar to his duties. The

4

activities Thweatt was engaged in here did not "[contribute] to the effective management of the employer's operation". *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir. 1996).

### 2. Whether the Action Occurred Substantially Within the Authorized Spacial and Temporal Limits of the Employment

There is no debate that this matter occurred substantially within the authorized spatial limits of the employment. All parties were located at Land Between the Lakes, Thweatt's place of employment, when the incident occurred. However, Thweatt was not within the temporal limits of his employment.

The timesheet attached to Thweatt's motion shows that he did not list any work hours for October 9, 2016. [DN 8-1] Guthrie argues Thweatt engaged in "extensive" work activities on October 8 and 9. Thweatt did in fact log hours on October 8. [*Id.*] However, evidence that he did work the day before is not proof that he was working at the time the incident occurred. Due to Thweatt not logging any hours for that day, he was not within the temporal limits of his employment. *See McGonigle v. Whitehawk,* 481 F. Supp. 2d 835, 840 (W.D. Ky. 2007).

Guthrie relies heavily on the fact Thweatt was seemingly dressed in his uniform that day. Guthrie states Thweatt was dressed in a green U.S. Forestry Service long sleeve shirt, U.S. Forestry Service har, belt and nametag. [DN 12-1 at PageID 90.] Thweatt argues that was not his official uniform. Even if this was Thweatt's official uniform, it is not enough alone to establish he was working at that time. Simply because an individual was dressed in uniform does not mean they are engaged in their employment.

Guthrie also points to a prior weekend Thweatt invited her and K.L. to join him at Land Between the Lakes. On Saturday October 1, 2016, Guthrie and K.L. rode horses with Thweatt while he checked trails and interacted with other riders. [DN 12-1 at PageID 92.] In a picture allegedly taken on October 1, 2016, Thweatt is dressed in a long sleeve green shirt. [DN 12-4.] On

October 2, 2016, Thweatt also rode with Guthrie while picking up trash and interacting with other riders. Thweatt did log hours for this day. [DN 8-1.] However, Guthrie does not allege Thweatt conducted any of these other activities while on their ride on October 9. There is no evidence that during that ride Thweatt cleaned up the trails, interacted with any other riders or engaged in any other work activity. Therefore, Thweatt was not within the temporal limits of his employment.

3. Whether the Action was in Furtherance of the Employer's Business

"[W]hen determining whether the employee's conduct furthers the business of the employer, the "conduct in question need only be done in part to benefit the employer." *McGonigle,* 481 F.Supp. at 840 (quoting *Coleman*, 91 F.3d at 825–26). "However, if an employee 'acts from purely personal motives ... which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable.'" *Id.* (quoting *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky.2005)). "If an employee deviates from the employer's business, for however short of a time period, to do acts which are not connected with the employer's business, the relationship is suspended and the employee is not acting within the scope of his employment." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 4 (Ky. Ct. App. 2018), review denied (Mar. 6, 2019) (citing *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81, 83 (1946).

Here, Thweatt was on a horseback ride with personal guests. The fact he chose to ride on the trails at his place of employment rather than another location does not show the conduct was done to benefit his employer. In her brief, Guthrie states Thweatt was "in position to observe the trails and his other worksites" and he "no doubt was inspecting the trails and, in a position…to report any problems or dangerous conditions." [DN 12 at PageID 86.] However, in her declaration, Guthrie made no statement that they were going on the horseback ride to inspect the trails. Nor did

6

she make a statement Thweatt did inspect the trails on this ride. Thweatt going on a horseback ride with family and his girlfriend cannot be described as actions done in furtherance of Thweatt's employer's business.

### 4. Whether the Conduct, Though Unauthorized, was Expectable in View of the Employee's Duties

"In looking at this factor, courts should refer back to their analysis used in the first factor to help determine whether the conduct was expected in light of the employee's duties." *McGonigle*, 481 F.Supp.2d at 841 (citing *Coleman*, 91 F.3d at 826). Here, horseback rides with guests is not explicitly listed as one of Thweatt's responsibilities. [*See* DN 9-1 at PageID 64-65.] It also is not expectable in view of his duties. It is not expectable for Thweatt to invite personal guests to the campsite and go on horseback rides with them. The actions that occurred during the horseback ride are completely separate and distinct from Thweatt's duties as an employee. Thweatt's role as a "primary point of contact with visitors and users" does not make this any more expectable. A horseback ride with family members is not a foreseeable act based on Thweatt's duties.

After considering all four factors, the Court finds that Thweatt was not acting within the scope and course of his employment. Since Thweatt was not acting withint the scope of his employment, this Court does not have jurisdiction under 28 U.S.C. § 1346(b)(1). Due to the Court finding Thweatt was not acting within the scope of his employment, the United States has no liability. *See McGonigle,* 481 F.Supp. at 840 (Where an employee has "departed from his employment…the master is not liable."). The Court need not consider Thweatt's alternative Motion to Dismiss under 12(b)(6) because it does not have jurisdiction.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Guthrie's Motion for Extension of Time to Respond [DN 10] is **GRANTED**. Thweatt's Motion to Dismiss [DN 8] is

**GRANTED**. The United States' Motion to Dismiss [DN 9] is **GRANTED**. A separate Judgment will be entered.

      **IT IS SO ORDERED.**

                                **Thomas B. Russell, Senior Judge**
                                **United States District Court**

                                        August 6, 2020

cc: counsel